Opinion
 

 BAXTER, J.
 

 The trial court certified this case as a nationwide class action without determining the force and effect of contractual agreements that, according to the defendant, would require the application of different states’ laws in the action. The Court of Appeal found certification was proper because the defendant had failed to show that the contractually selected laws would lead to different results. We conclude the certification order must be
 
 *912
 
 vacated, for it was based upon an incomplete and erroneous analysis of factors relevant to certification.
 

 Factual and Procedural Background
 

 American Savings Bank, now Washington Mutual Bank, FA (hereafter ASB), originated home mortgage loans in California, Arizona, Colorado, and Texas, and purchased loans from other lenders throughout the United States. ASB’s standard loan documents included a deed of trust that requires the mortgagor to maintain hazard insurance on the secured property and provides that if the mortgagor fails to do so, “then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender’s rights in the property,” and “[a]ny amounts [so] disbursed . . . shall become additional debt” of the mortgagor, secured by the deed of trust. The deed of trust also contained a clause stating: “This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the [secured property] is located.”
 

 Jayne A. Briseno sued ASB on behalf of herself and all others similarly situated for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practice violations under California’s unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.),
 
 [1]
 
 unjust enrichment, and conversion. According to the second amended complaint, ASB maintained a practice of procuring expensive replacement insurance (forced order insurance) when mortgagors defaulted on their loan obligation to maintain appropriate policies of hazard insurance for their properties. The amount ASB charged the mortgagor for forced order insurance typically was two to five times more than the amount of the premium on the original lapsed policy would have been. The crux of the dispute is whether ASB victimized its borrowers by systematically overcharging for the replacement insurance coverage and secretly profiting through cash commissions or in-kind services from the vendors of the replacement insurance.
 

 In 1998, Briseno moved to certify this case as a nationwide class action, comprised of at least 25,000 mortgagors located throughout the United States who were charged excessive premiums for forced order insurance since 1993, excluding those who received refunds of the entire premium. She argued, among other things, that California could constitutionally exercise jurisdiction over the claims of nonresident mortgagors and that California could apply its own substantive law unless ASB proved otherwise under
 
 *913
 
 California conflict of laws rules. ASB responded that common questions of law do not predominate for a nationwide class because enforcement of the choice-of-law provision in each mortgagor’s loan documents meant that the action would entail the application of the laws of all 50 states.
 

 The trial court ordered certification of a nationwide class action without purporting to decide what law applies to the claims of the class members. After the Court of Appeal summarily denied ASB’s petition for extraordinary relief, we granted ASB’s petition for review and transferred the case back to the Court of Appeal with instructions to issue an alternative writ.
 

 After complying with our directive, the Court of Appeal denied ASB’s writ petition and discharged the alternative writ. The court affirmed the certification order, reasoning that “[a]t most the choice of law clause raises the potential that another state’s law might apply.” It concluded, in effect, that a defendant who opposes nationwide class certification on the basis of choice-of-law agreements has the burden of demonstrating that the contractually selected laws will lead to results different from California law and render a nationwide class action unsuitable. We granted ASB’s petition for review.
 

 Discussion
 

 Section 382 of the Code of Civil Procedure authorizes class suits in California when “the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.” The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members.
 
 (Linder v. Thrifty Oil Co.
 
 (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27];
 
 Richmond v. Dart Industries, Inc.
 
 (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)
 

 To establish the requisite community of interest, the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members (hereafter sometimes referred to as predominance). (See
 
 Richmond v. Dart Industries, Inc., supra,
 
 29 Cal.3d at p. 470.) In essence, this means “each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the
 
 *914
 
 litigants.”
 
 (City of San Jose
 
 v.
 
 Superior Court
 
 (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) A class action should be certified only if it will provide substantial benefits both to the courts and the litigants.
 
 (Linder v. Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 435;
 
 City of San Jose
 
 v.
 
 Superior Court, supra,
 
 12 Cal.3d at p. 460.)
 

 “Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.”
 
 (Linder v. Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 435.) Nonetheless, “an order based upon improper criteria or incorrect assumptions calls for reversal ‘ “even though there may be substantial evidence to support the court’s order.” ’ ”
 
 (Id.
 
 at p. 436.)
 

 ASB contends that, where putative class members across the nation have contractually agreed in advance to application of their own state’s law, the trial court must apply the choice-of-law analysis set forth in
 
 Nedlloyd Lines B.V. v. Superior Court (1992) 3
 
 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148]
 
 (Nedlloyd)
 
 when evaluating a certification motion. Here, ASB claims, both the trial court and the Court of Appeal impermissibly sidestepped Nedlloyd’s analysis and erroneously concluded that, even if class claims are subject to enforceable choice-of-law clauses, the clauses are of no significance to the certification decision unless their proponent demonstrates that the contractually designated law is different from California law and when applied will lead to a different result. ASB requests that we reverse the denial of its petition for a writ of mandate and remand this matter to the Court of Appeal with instructions as to the appropriate analysis for the trial court to undertake.
 

 This case presents two pivotal questions arising when certification of a nationwide or multistate class action is sought. First, what is the appropriate analysis for selecting applicable law in a class action where putative class members have contractually agreed to application of another state’s law? Second, what analysis must be undertaken in the event litigation of the class action will necessitate application of the laws of multiple states? We address these questions in turn.
 
 [2]
 

 A.
 
 Selection of applicable law
 

 California has two different analyses for selecting which law should be applied in an action. When the parties have an agreement that another
 
 *915
 
 jurisdiction’s law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in
 
 Nedlloyd, supra,
 
 3 Cal.4th 459, which addresses the enforceability of contractual choice-of-law provisions. Alternatively, when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law. As we shall explain, a trial court considering nationwide class certification might be required to utilize both analyses.
 

 1.
 
 Choice-of-law agreements
 

 To date, most of the California decisions that have considered nationwide class action certification have not involved a contractual choice-of-law clause. Those decisions, however, perceive that a reasoned analysis regarding the applicable law is critical in actions seeking to assert claims on behalf of nonresidents. (E.g.,
 
 Clothesrigger, Inc. v. GTE Corp.
 
 (1987) 191 Cal.App.3d 605, 615 [236 Cal.Rptr. 605] (Clothesrigger); see
 
 Norwest Mortgage, Inc. v. Superior Court
 
 (1999) 72 Cal.App.4th 214, 229 [85 Cal.Rptr.2d 18] [although contractual clauses involved, certification reversed on alternative ground].) Discerning the applicable law is an important task in class actions, for if the claims of nonresident class members will require adjudication under the laws of the members’ home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification.
 
 (Clothesrigger, supra,
 
 191 Cal.App.3d at p. 619.) The trial court should deny certification if it determines that “such complexity results in common legal questions not predominating or makes nationwide class litigation unmanageable.” (Ibid.; see
 
 Canon U.S.A., Inc. v. Superior Court
 
 (1998) 68 Cal.App.4th 1, 7 [79 Cal.Rptr.2d 897]
 
 (Canon
 
 U.S.A.) [permitting resolution of such issues at the pleading stage];
 
 Osborne v. Subaru of America, Inc.
 
 (1988) 198 Cal.App.3d 646, 655-658 [243 Cal.Rptr. 815];
 
 Rose v. Medtronics, Inc.
 
 (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16].) Conversely, the court “may certify the nationwide class despite such complexity if it determines the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied.”
 
 (Clothesrigger, supra,
 
 191 Cal.App.3d at p. 619.)
 

 We agree that the choice-of-law determination is of central importance to issues of predominance and manageability where certification of a nationwide class is sought. Accordingly, we conclude trial courts considering such certification generally must apply the analysis set forth in
 
 Nedlloyd,
 
 
 *916
 

 supra,
 
 3 Cal.4th 459, to evaluate disputed claims that class causes of action are subject to enforceable choice-of-law agreements.
 

 Pursuant to
 
 Nedlloyd,
 
 the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope. (See
 
 Nedlloyd, supra,
 
 3 Cal.4th at pp. 468-470.) In
 
 Nedlloyd
 
 we found, as a matter of California law, that a clause negotiated by sophisticated business entities was phrased broadly enough to encompass the plaintiff’s fiduciary duty claim, in addition to its claims for breach of contract and breach of the implied covenant of good faith and fair dealing.
 
 [3]
 

 (Id.
 
 at pp. 468-470.) As we explained, “[wjhen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to
 
 all
 
 disputes arising out of the transaction or relationship.”
 
 (Id.
 
 at p. 469.)
 

 If the trial court finds that the class claims fall within the scope of a choice-of-law clause, it must next evaluate the clause’s enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement).
 
 [4]
 
 Under that approach, the court must first determine: “(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties’ choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties’ choice of law. If, however, either test is met, the court must next determine whether the chosen state’s law is contrary to
 
 & fundamental
 
 policy of California. If there is no such conflict, the court shall enforce the parties’ choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a ‘materially greater interest than the chosen state in the determination of the particular issue . . . .’ (Rest., § 187, subd. (2).) If California has
 
 *917
 
 a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state’s fundamental policy.”
 
 [5]
 

 (Nedlloyd, supra,
 
 3 Cal.4th at p. 466, fhs. omitted.)
 

 As
 
 Nedlloyd
 
 recognizes, the foregoing approach “reflects] strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses.”
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 462.) Accordingly, if the proponent of the clause (here, the party opposing nationwide class certification) demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties’ choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue. (See
 
 id.
 
 at pp. 468, 471 [upholding application of chosen law where party opposing the clause failed to make such showings].)
 

 Amici curiae in support of Briseno argue that
 
 Nedlloyd.’
 
 s analysis should not apply to choice-of-law provisions in consumer adhesion contracts. In their view, Nedlloyd’s test was designed to apply only to freely and voluntarily bargained-for choice-of-law agreements between equally powerful and sophisticated commercial entities.
 

 Even though
 
 Nedlloyd
 
 was decided in the context of a negotiated arm’s length transaction between sophisticated business entities, its analysis appears suitable for a broader range of contract transactions. California, we observe, has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate. (See
 
 Bos Material Handling, Inc. v. Crown Controls Corp.
 
 (1982) 137 Cal.App.3d 99, 108 [186 Cal.Rptr. 740];
 
 Gamer v. duPont Glore Forgan, Inc.
 
 (1976) 65 Cal.App.3d 280, 286-287 [135 Cal.Rptr. 230];
 
 Windsor Mills, Inc.
 
 v.
 
 Collins & Aikman Corp.
 
 (1972) 25 Cal.App.3d 987, 995, fn. 6 [101 Cal.Rptr. 347].) More importantly, Nedlloyd’s analysis contains safeguards to protect contracting parties, including consumers, against choice-of-law agreements that are unreasonable or in contravention of a fundamental California policy.
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 466.) Under
 
 *918
 

 Nedlloyd,
 
 which adopted" the Restatement approach and found the enforceability of choice-of-law clauses closely related to that of forum-selection clauses
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 464), the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that “substantial injustice” would result from its enforcement (Rest., § 187, com. (b), p. 562)
 
 [6]
 
 or that superior power was unfairly used in imposing the contract (see
 
 Cal-State Business Products & Services, Inc. v. Ricoh
 
 (1993) 12 Cal.App.4th 1666, 1679-1680 [16 Cal.Rptr.2d 417] [indicating that evidence of unfair use of bargaining power may defeat enforcement of a forum-selection clause contained in an adhesion contract]). In light of these protections, we conclude Nedlloyd.'’s analysis is properly applied in the context of consumer adhesion contracts.
 

 Finally, we address the Court of Appeal’s suggestion that California businesses dealing with mass groups of consumers should not be permitted to rely on choice-of-law clauses as a means of avoiding involvement in a nationwide class action. The point is not well taken. “Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.”
 
 (City of San Jose v. Superior Court, supra,
 
 12 Cal.3d at p. 462, fn. omitted; see
 
 Granberry v. Islay Investments
 
 (1995) 9 Cal.4th 738, 749 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Consequently, an otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a multistate or nationwide class action or result in the exclusion of nonresident consumers from a California-based class action.
 

 Of course, choice-of-law agreements have no effect in a class action if the trial court determines that they are unenforceable or that class claims fall outside their scope. Nonetheless, if the class action opponent continues to
 
 *919
 
 invoke the application of foreign law to the claims of out-of-state class members, the trial court remains obligated to analyze the governmental interests of the various jurisdictions involved to determine whose law is more properly applied.
 

 2.
 
 Governmental interests and comparative impairment
 

 In
 
 Phillips Petroleum Co.
 
 v.
 
 Shutts
 
 (1985) 472 U.S. 797 [105 S.Ct. 2965, 86 L.Ed.2d 628], the United States Supreme Court held that a forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a “ ‘significant contact or significant aggregation of contacts’ ” to the claims of each class member such that application of the forum law is “not arbitrary or unfair.”
 
 [7]
 

 (Id.
 
 at pp. 821-822 [105 S.Ct. at p. 2979];
 
 Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.
 
 (1993) 14 Cal.App.4th 637, 649-650 [17 Cal.Rptr.2d 713].) But even where its own law may be constitutionally applied, California follows a three-step “governmental interest analysis” to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement.
 
 (Clothesrigger, supra,
 
 191 Cal.App.3d at pp. 612-616, 619; see generally
 
 Application Group, Inc. v. Hunter Group, Inc.
 
 (1998) 61 Cal.App.4th 881, 896 [72 Cal.Rptr.2d 73] [cases involving choice-of-law clauses present an exception to application of governmental interest approach];
 
 Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc., supra,
 
 14 Cal.App.4th at pp. 645-646.)
 

 “ ‘[Generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.’ ”
 
 (Bernhard v. Harrah’s Club
 
 (1976) 16 Cal.3d 313, 317-318 [128 Cal.Rptr. 215, 546 P.2d 719], quoting
 
 Hurtado v. Superior Court
 
 (1974) 11 Cal.3d 574, 581 [114 Cal.Rptr. 106, 522 P.2d 666]
 
 (Hurtado);
 
 cf.
 
 Offshore Rental Co. v. Continental Oil Co.
 
 (1978) 22 Cal.3d 157, 163, fn. 5 [148 Cal.Rptr. 867, 583 P.2d 721] [cautioning against an unduly literal reading of quoted statements and noting that courts may make their own determination of the policies and interests of the involved states].) Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. The fact that two or more states are involved does not in itself indicate
 
 *920
 
 there is a conflict of laws problem.
 
 (Hurtado, supra,
 
 11 Cal.3d at p. 580.) Indeed, if the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable to class claims.
 
 (Ibid.;
 
 see
 
 Bernhard v. Harrah’s Club, supra,
 
 16 Cal.3d at p. 317.)
 

 If, however, the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case.
 
 (Hurtado, supra,
 
 11 Cal.3d at p. 580.) Despite materially different laws, “there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied.”
 
 (Ibid.;
 
 see
 
 Bernhard v. Harrah’s Club, supra,
 
 16 Cal.3d at p. 317.) This means the trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state’s interest in having its own law applied. (See
 
 Bernhard v. Harrah’s Club, supra,
 
 16 Cal.3d at pp. 317-318;
 
 In re Title U.S.A. Ins. Corp.
 
 (1995) 36 Cal.App.4th 363, 372 [42 Cal.Rptr.2d 498].)
 

 Only if the trial court determines that the laws are materially different
 
 and
 
 that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be “more impaired” if its law were not applied.
 
 (Bernhard
 
 v.
 
 Harrah’s Club, supra,
 
 16 Cal.3d at p. 320; see also
 
 Offshore Rental Co. v. Continental Oil Co., supra,
 
 22 Cal.3d at pp. 164-165.) In making this comparative impairment analysis, the trial court must determine “the relative commitment of the respective states to the laws involved” and consider “the history and current status of the states’ laws” and “the function and purpose of those laws.”
 
 (Offshore Rental Co. v. Continental Oil Co., supra,
 
 22 Cal.3d at p. 166.) These rules apply whether the dispute arises out of contract or tort
 
 (Application Group, Inc.
 
 v.
 
 Hunter Group, Inc., supra,
 
 61 Cal.App.4th at p. 896; cf.
 
 Bernkrant v. Fowler
 
 (1961) 55 Cal.2d 588, 594 [12 Cal.Rptr. 266, 360 P.2d 906]), and a separate conflict of laws inquiry must be made with respect to each issue in the case
 
 (Application Group, Inc. v. Hunter Group, Inc., supra,
 
 61 Cal.App.4th at p. 896;
 
 Beech Aircraft Corp. v. Superior Court
 
 (1976) 61 Cal.App.3d 501, 518 [132 Cal.Rptr. 541]).
 

 Amici curiae in support of ASB argue that the burdens contemplated in
 
 Hurtado, supra,
 
 11 Cal.3d 574, should not apply when a nationwide class action is at issue. In their view, the law of the other states in which class members reside should presumably govern their claims unless the
 
 proponent
 
 of class certification affirmatively demonstrates that California law is more properly applied. To support this position, amici curiae point out that
 
 *921
 
 nationwide class actions may be, and often are, used to resolve the claims of nonresidents who lack the minimum contacts in the forum state normally needed to support personal jurisdiction. (See
 
 Phillips Petroleum Co. v. Shutts, supra,
 
 472 U.S. at pp. 806-814 [105 S.Ct. at pp. 2971-2975].) In such cases, they argue, California may not constitutionally weigh the scales in favor of applying its own law. We disagree.
 

 As amici curiae acknowledge, and as already noted above, a forum state may constitutionally apply its own law to the claims of nonresident class members if the state has a “ ‘significant contact or significant aggregation of contacts’ to the claims asserted by each member of the plaintiff class, contacts ‘creating state interests,’ in order to ensure that the choice of [the forum’s] law is not arbitrary or unfair.”
 
 (Phillips Petroleum Co. v. Shutts, supra,
 
 472 U.S. at pp. 821-822 [105 S.Ct. at p. 2979].) Accordingly, so long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.
 
 [8]
 

 In sum, in the absence of an effective choice-of-law agreement to the contrary, California law may be used on a classwide basis so long as its application is not arbitrary or unfair with respect to nonresident class members
 
 (Phillips Petroleum Co.
 
 v.
 
 Shutts, supra,
 
 472 U.S. at pp. 821-822 [105 S.Ct. at p. 2979]), and so long as the interests of other states are not found to outweigh California’s interest in having its law applied
 
 (Bernhard
 
 v.
 
 Harrah’s Club, supra,
 
 16 Cal.3d at p. 320;
 
 Clothesrigger, supra,
 
 191 Cal.App.3d at p. 614).
 

 
 *922
 
 B.
 
 Certification considerations where laws of multiple states found applicable■ in action
 

 As indicated, choice-of-law and conflict of laws issues are significant when certification of a nationwide class is sought. In the event a trial court determines that class claims will require adjudication under the laws of multiple states, the court must then ascertain whether variations exist among the applicable laws. Although the involvement of more than one state’s law does not make a class action per se unmanageable, any variances among state laws must be examined to determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently.
 

 In California it is settled that the class action proponent bears the burden of establishing the propriety of class certification.
 
 (Linder
 
 v.
 
 Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 435;
 
 Richmond
 
 v.
 
 Dart Industries, Inc., supra, 29
 
 Cal.3d at p. 470.) Although such burden clearly contemplates a demonstration of predominance and manageability
 
 (Clothesrigger, supra,
 
 191 Cal.App.3d at p. 619;
 
 Canon U.S.A., supra,
 
 68 Cal.App.4th at pp. 7-8;
 
 Osborne v. Subaru of America, Inc., supra,
 
 198 Cal.App.3d at pp. 655-658;
 
 Rose v. Medtronics, Inc., supra,
 
 107 Cal.App.3d at p. 157), there are few California decisions specifically addressing how the proponent may meet this burden.
 

 The procedures articulated in the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) provide no aid on this particular issue. Therefore, we may look to the procedures governing federal class actions under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 23) for guidance.
 
 (Linder v. Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 437;
 
 Civil Service Employees Ins. Co. v. Superior Court
 
 (1978) 22 Cal.3d 362, 376 & fn. 7 [149 Cal.Rptr. 360, 584 P.2d 497].)
 

 Our survey of the relevant federal decisions, i.e., those involving multistate class actions under Rule 23(b)(3),
 
 [9]
 
 discloses that, as in California, it is incumbent upon the class action proponent to prove each required element
 
 *923
 
 for class certification, including predominance of common issues and manageability.
 
 (In re American Medical Systems, Inc.
 
 (6th Cir. 1996) 75 F.3d 1069, 1085-1086; see
 
 Castano v. American Tobacco Co.
 
 (5th Cir. 1996) 84 F.3d 734, 741-742;
 
 Commander Properties Corp.
 
 v.
 
 Beech Aircraft Corp.
 
 (D.Kan. 1995) 164 F.R.D. 529, 541; but see
 
 Maywalt
 
 v.
 
 Parker & Parsley Petroleum Co.
 
 (S.D.N.Y. 1993) 147 F.R.D. 51, 58 [manageability concerns regarding pendent state law claims found speculative since court declined to select applicable law at time of certification].) For a significant number of federal courts, this means the proponent must “creditably demonstrate, through an ‘extensive analysis’ of state law variances, ‘that class certification does not present insuperable obstacles.’ ”
 
 (Walsh
 
 v.
 
 Ford Motor Co.
 
 (D.C. Cir. 1986) 807 F.2d 1000, 1017 [257 App.D.C. 85], relying upon
 
 In re School Asbestos Litigation
 
 (3d Cir. 1986) 789 F.2d 996, 1010;
 
 Weikel v. Tower Semiconductor Ltd.
 
 (D.N.J. 1998) 183 F.R.D. 377, 401-403;
 
 In re Jackson Nat. Life Ins. Co. Premium Litigation
 
 (W.D.Mich. 1998) 183 F.R.D. 217, 223;
 
 In re Ford Motor Co. Bronco II Product Liab. Lit.
 
 (E.D.La. 1997) 177 F.R.D. 360, 368-369; see
 
 Valentino v. Carter-Wallace, Inc.
 
 (9th Cir. 1996) 97 F.3d 1227, 1234-1235;
 
 Castano v. American Tobacco Co., supra,
 
 84 F.3d at p. 741;
 
 In re American Medical Systems, Inc., supra,
 
 75 F.3d at p. 1085;
 
 Priest v. Zayre Corp.
 
 (D.Mass. 1988) 118 F.R.D. 552, 558; but see
 
 Barker
 
 v.
 
 FSC Securities Corp.
 
 (W.D.Ark. 1989) 133 F.R.D. 548, 554-555 [pendent state claims certified where
 
 defendants
 
 failed to establish material state law differences];
 
 Longden
 
 v.
 
 Sunderman
 
 (N.D.Tex. 1988) 123 F.R.D. 547, 555-556 [noting
 
 defendant’s
 
 failure to show substantive variations in state fraud laws];
 
 Dekro v. Stem Bros. & Co.
 
 (W.D.Mo. 1982) 540 F.Supp. 406, 418 [same].)
 

 On this score, the presentation must be sufficient to permit the district court, at the time of certification, to make a detailed assessment of how the difficulties posed by the variations in state law will be managed at trial.
 
 (Castano
 
 v.
 
 American Tobacco Co., supra,
 
 84 F.3d at pp. 741-742;
 
 In re Jackson Nat. Life Ins. Co. Premium Litigation, supra,
 
 183 F.R.D. at p. 223;
 
 Chin v. Chrysler Corp.
 
 (D.N.J. 1998) 182 F.R.D. 448, 458;
 
 Tylka v. Gerber Products Co.
 
 (N.D.Ill. 1998) 178 F.R.D. 493, 498;
 
 In re Stucco Litigation
 
 (E.D.N.C. 1997) 175 F.R.D. 210, 216-217.) For example, certification may be appropriate if the class action proponent shows that state law variations can be effectively managed through the creation of a small number of subclasses grouping the states that have similar legal doctrines. (See
 
 Walsh
 
 v.
 
 Ford Motor Co., supra,
 
 807 F.2d at p. 1017;
 
 Tylka v. Gerber Products Co., supra,
 
 178 F.R.D. at p. 498;
 
 In re Telectronics Pacing Systems, Inc.
 
 (S.D.Ohio 1996) 168 F.R.D. 203, 221.)
 

 
 *924
 
 A number of federal courts also caution that if more than a few of the laws of the 50 states differ, the district court may face an impossible task of instructing a jury on the relevant law.
 
 (In re American Medical Systems, Inc., supra,
 
 75 F.3d at p. 1085;
 
 Chin
 
 v.
 
 Chrysler Corp., supra,
 
 182 F.R.D. at p. 458.) To meet such concerns, the district court possesses discretion to require the class action proponent to submit sample jury instructions and special verdict forms demonstrating how class causes of action could be presented to a jury for resolution “ ‘in a way that fairly represents the law of the 50 states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac.’ ”
 
 (Chin v. Chrysler Corp., supra,
 
 182 F.R.D. at p. 458; see
 
 In re Stucco Litigation, supra,
 
 175 F.R.D. at p. 216.) This call for a manageable set of jury instructions presupposes that even slight variations and nuances in applicable state laws may affect predominance and manageability.
 
 (In re Stucco Litigation, supra,
 
 175 F.R.D. at p. 216; see also
 
 Matter of Rhone-Poulenc Rorer Inc.
 
 (7th Cir. 1995) 51 F.3d 1293, 1300;
 
 Fisher v. Bristol-Myers Squibb Co.
 
 (N.D.Ill. 1998) 181 F.R.D. 365, 368;
 
 Tylka v. Gerber Products Co., supra,
 
 178 F.R.D. at p. 498 [concluding that plaintiffs failed to meet their burden of demonstrating that the nuances of 50 consumer fraud statutes and 50 common laws are manageable] ; cf.
 
 In re Telectronics Pacing Systems, Inc.
 
 (S.D.Ohio 1997) 172 F.R.D. 271, 291-294 [while even slight variations may be significant and relevant with respect to manageability issues, those that are insignificant or unimportant to the issues at stake should not preclude class action certification].
 
 [10]
 
 )
 

 The foregoing decisions stress that a district court considering certification of a nationwide class cannot simply rely on counsel’s assurances of manageability.
 
 (Castano v. American Tobacco Co., supra,
 
 84 F.3d at p. 742;
 
 In re Jackson Nat. Life Ins. Co. Premium Litigation, supra,
 
 183 F.R.D. at p. 223;
 
 Chin
 
 v.
 
 Chrysler Corp., supra,
 
 182 F.R.D. at p. 459;
 
 In re Telectronics Pacing Systems, Inc., supra,
 
 168 F.R.D. at p. 221.) Put another way, the court cannot accept “on faith” an assertion that variations in state laws relevant to the case do not exist or are insignificant; rather, the party seeking certification must affirmatively demonstrate the accuracy of the assertion.
 
 (Castano
 
 v.
 
 American Tobacco Co., supra,
 
 84 F.3d at pp. 741-742;
 
 Walsh v. Ford Motor Co., supra,
 
 807 F.2d at p. 1016.) Moreover, it is insufficient to merely refer the district court to densely worded articles, graphs, and charts pertaining to each state’s laws. As one court explained, class action proponents
 
 *925
 
 “should not expect the court to ferret through, disseminate, and craft manageable schemes” from such materials when that burden “clearly rests” with the proponents.
 
 (Tylka v. Gerber Products Co., supra,
 
 178 F.R.D. at p. 498, fn. 3.) The courts in several of our sister states are in accord. (E.g.,
 
 Ex parte Green Tree Financial Corp.
 
 (Ala. 1998) 723 So.2d 6, 10-11 [borrowers failed to establish that state law variations would not swamp common issues and defeat predominance in action for breach of contract, breach of duty, civil conspiracy, negligence, and wantonness against lender for allegedly improper use of force-placed insurance];
 
 Carroll v. Célico Partnership
 
 (1998) 313 NJ.Super. 488 [713 A.2d 509, 518] [criticizing trial court for glossing over potential state law differences and speculating on a hypothetical system to deal with factual differences];
 
 Duvall v. TRW, Inc.
 
 (1991) 63 Ohio App.3d 271 [578 N.E.2d 556, 559-560] [plaintiff failed to sustain burden where he presented no analysis on state law variations regarding strict liability, negligence, breach of warranty, and punitive damages].)
 

 In
 
 Canon U.S.A., supra,
 
 68 Cal.App.4th 1, the Court of Appeal held that a trial court may, at the pleading stage, consider whether certification of a nationwide class would require application of numerous different state rules of law and “whether California has a ‘special obligation’ to undertake” the massive burden of such litigation.
 
 [11]
 

 (Id.
 
 at p. 8.) Relying on two federal authorities, the court indicated that a party seeking certification bears the burden of demonstrating how subclasses could be formed to alleviate problems presented by state law variances.
 
 (Ibid.,
 
 relying upon
 
 Walsh v. Ford Motor Co., supra,
 
 807 F.2d at pp. 1016-1017 and
 
 In re Ford Motor Co. Ignition Switch Products
 
 (D.N.J. 1997) 174 F.R.D. 332, 350.) The court issued a writ of mandate directing the trial court to vacate its order denying the defendants’ motion to strike from the complaint all references to a nationwide class. The trial court was instructed to reconsider the motion after giving the class action proponents an opportunity to present “a more thorough analysis of the conflicting laws of the various states, and to show how subclasses can be created, or if they would be feasible, to maintain a class action.”
 
 (Canon U.S.A., supra,
 
 68 Cal.App.4th at pp. 8-9 & fn. 6; see
 
 Norwest Mortgage, Inc.
 
 v.
 
 Superior Court, supra,
 
 72 Cal.App.4th at p. 229 [remanding with directions to undertake
 
 Canon U.SA.’s
 
 analysis in the event plaintiffs sought certification of class with nonresident members and laws of other states were found controlling].)
 

 
 *926
 
 Like
 
 Canon U.S.A.,
 
 we favor adoption of the type of burdens articulated in the federal decisions above. Accordingly, we hold that a class action proponent must credibly demonstrate, through a thorough analysis of the applicable state laws, that state law variations will not swamp common issues and defeat predominance. Additionally, the proponent’s presentation must be sufficient to permit the trial court, at the time of certification, to make a detailed assessment, of how any state law differences could be managed fairly and efficiently at trial, for example, through the creation of a manageable number of subclasses.
 
 [12]
 
 Trial courts, in assessing the propriety of nationwide class certification, must consider these factors, as well as all the other factors relevant to certification, including the potential recovery of each individual claimant and whether the proposed class suit is the only effective way to redress the alleged wrongdoing or to prevent unjust advantage to the defendant. (See
 
 Linder
 
 v.
 
 Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 446;
 
 Blue Chip Stamps v. Superior Court
 
 (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755].) Adherence to these procedures should ensure that nationwide class actions are certified only where they will result in substantial benefits both to the litigants and the courts. (See
 
 City of San Jose
 
 v.
 
 Superior Court, supra,
 
 12 Cal.3d at p. 459.)
 

 Briseno argues that a defendant should not be able to defeat nationwide class certification without affirmatively showing the existence of outcome-determinative differences among applicable state laws as contemplated by
 
 Hurtado, supra,
 
 11 Cal.3d at pages 580-581. We reject this argument for three reasons.
 

 First, the showing required in
 
 Hurtado, supra,
 
 11 Cal.3d 574, is relevant to the issue of which state’s law is more appropriately applied to the claims of nonresident class members; it would serve no useful purpose
 
 after
 
 a trial court has decided to apply the laws of other states. Such a rule would, in effect, impermissibly relieve the class action proponent of the burden of establishing predominance and manageability.
 

 Second, we are not convinced by those of Briseno’s authorities in which courts certified multistate class actions without determining the applicable law or delving into manageability issues. (E.g.,
 
 Longden v. Sunderman, supra,
 
 123 F.R.D. at pp. 555-556;
 
 In re LILCO Securities Litigation
 
 (E.D.N.Y. 1986) 111 F.R.D. 663, 670 [even if 50 states’ laws must be
 
 *927
 
 applied to pendent state claims, decertification is an option if material variations render their adjudication unmanageable].) As discussed
 
 ante,
 
 in part A, a trial court cannot reach an informed decision on predominance and manageability without first determining whether class claims will require adjudication under the laws of other jurisdictions and then evaluating the resulting complexity where those laws must be applied.
 
 (Clothesrigger, supra,
 
 191 Cal.App.3d at p. 619; see
 
 Canon U.S.A., supra,
 
 68 Cal.App.4th at pp. 7-8;
 
 Osborne
 
 v.
 
 Subaru of America, Inc., supra,
 
 198 Cal.App.3d at pp. 654-659; cf.
 
 Rose
 
 v.
 
 Medtronics, Inc., supra,
 
 107 Cal.App.3d at p. 157.) That a trial court retains the power to consider decertification when a class action later proves to be unmanageable (see
 
 Vasquez v. Superior Court
 
 (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) should not serve to lessen the court’s initial responsibility to grant certification only where all of the requirements for certification have been met.
 

 Third, several of Briseno’s authorities do not apply the burden she proposes, but actually support the rule we adopt. (E.g.,
 
 In re Prudential Ins. Co. America Sales Litigation
 
 (3d Cir. 1998) 148 F.3d 283, 315-316 & fn. 57 [agreeing with district court’s conclusion that state law variations fell into a limited number of predictable patterns and did not render action unmanageable, but noting the manageability requirement may no longer be necessary where, as there, certification of a
 
 settlement-only
 
 class action was sought];
 
 In re School Asbestos Litigation, supra,
 
 789 F.2d at p. 1010 [expressing doubts, but deferring to district court’s wide discretion regarding manageability of litigation].) In one case, a federal district court agreed that the application of various states’ laws raises “a very real concern” regarding manageability of a class action at trial.
 
 (In re Copley Pharmaceutical, Inc.
 
 (D.Wyo. 1995) 161 F.R.D. 456, 465.) There, however, the court concluded that many of the state law nuances might be irrelevant in light of the particular defendant’s admissions regarding product contamination and liability.
 
 {Ibid.)
 
 These authorities, like the ones we rely upon, hew to the principle that certification of a nationwide class is not a matter of right but is contingent upon a showing that all prerequisites for a class action are met.
 

 C.
 
 Conclusions
 

 We conclude that the decision in this case to order certification of a nationwide class was premised upon the faulty legal assumption that choice-of-law issues need not be resolved as part of the certification process. In particular, the trial court should not have granted certification without first determining the effect of the choice-of-law agreements at issue as required by
 
 Nedlloyd, supra,
 
 3 Cal.4th 459.
 

 
 *928
 
 The trial court and the Court of Appeal also erred in concluding that, even assuming the enforceability of the choice-of-law agreements, nationwide class certification is appropriate because ASB did not demonstrate dispositive conflicts between California law and the law of other states. As explained
 
 ante,
 
 in part B, the party challenging certification is not required to make such a showing when the claims of putative class members must, by virtue of an advance consent, be resolved under the laws of other states. Rather, when an enforceable choice-of-law agreement is involved, the burden rests upon the party seeking nationwide class certification to identify any variations of applicable state law and to meaningfully demonstrate how a trial on the class causes of action can be conducted fairly and efficiently in light of those variations. Certification of a nationwide class is proper only where the class action proponent meets that burden
 
 and
 
 demonstrates that all other requirements for class certification are met (see
 
 Linder
 
 v.
 
 Thrifty Oil Co., supra,
 
 23 Cal.4th at p. 435;
 
 Richmond
 
 v.
 
 Dart Industries, Inc., supra, 29
 
 Cal.3d at p. 470).
 

 We emphasize that this opinion should not be read as expressing any views regarding the scope or enforceability of the choice-of-law provisions at issue, the existence or significance of differences between the various state laws, or the applicability of other states’ laws in this case. These are all determinations that the trial court should make in the first instance. Upon making such determinations, the trial court should consider afresh whether all the prerequisites of a nationwide class action are present, including predominance and manageability at trial.
 
 [13]
 

 Additionally we clarify that our opinion is intended to provide an analytical framework for evaluating the basic choice-of-law and conflict of laws issues that must be resolved when certification of a nationwide or multistate class action is sought; we have not undertaken to address all of the matters that may arise in connection with nationwide class action certification. For example, determinations regarding the applicable law may affect issues other than predominance and manageability, such as whether the representative
 
 *929
 
 plaintiffs have claims or defenses typical of those of the class or whether the representative plaintiffs can fairly and adequately protect the interests of the entire class. On a final note, we caution trial courts that determinations of predominance and manageability may vary case by case, depending upon individual factors such as the number and nature of the legal theories and evidentiary issues presented in the case, as well as the size and scope of the proposed class.
 
 [14]
 

 Disposition
 

 The judgment of the Court of Appeal is reversed. The matter is remanded to that court with instructions to issue a peremptory writ of mandate directing the trial court to vacate its order of certification and to conduct further proceedings consistent with the views expressed herein.
 

 George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 [1]
 

 ASB is not alleged to have violated the unfair business practices law of any other state; nor is relief sought under foreign state statutes that may be comparable to the UCL.
 

 [2]
 

 After briefing was completed in this matter, plaintiff “invited" us to take judicial notice of her recent dismissal of all causes of action save the one alleging violations of the UCL. Neither side has asked us to dismiss review or to limit review in light of such dismissal.
 

 [3]
 

 The clause, which appeared in a shareholders’ agreement between the parties, provided in relevant part: “ ‘This agreement shall be governed by and construed in accordance with Hong Kong law . . . .’ ” (Nedlloyd,
 
 supra,
 
 3 Cal.4th at p. 463.)
 

 Although we observed that the scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined under the law designated therein, we found it was appropriate to inteipret the
 
 Nedlloyd
 
 clause pursuant to California law because the parties neither requested judicial notice of Hong Kong law on the point nor supplied evidence of the relevant aspects of that law.
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 469, fn. 7.)
 

 [4]
 

 Restatement section 187, subdivision (2), should be applicable to most standard choice-of-law provisions. As noted in
 
 Nedlloyd,
 
 however, subdivision (1) of Restatement section 187 may instead apply where the parties incorporate into their contract by reference extrinsic material in the form of a designated law.
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 465, fn. 3.)
 

 [5]
 

 Restatement section 187, subdivision (2) does not necessarily require examination of the fundamental policy of the forum state (e.g., California here), but could in some instances necessitate consideration of the fundamental policy of a third state whose law would apply under the rule of Restatement section 188 in the absence of an effective choice of law.
 
 (Nedlloyd, supra,
 
 3 Cal.4th at p. 466, fn. 5.) Here, as in
 
 Nedlloyd,
 
 both sides assume the proper focus is on California.
 

 [6]
 

 Comment b to Restatement section 187 provides in full: “A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. A factor which the forum may consider is whether the choice-of-law provision is contained in an ‘adhesion’ contract, namely one that is drafted unilaterally by the dominant party and then presented on a ‘take-it-or-leave-it’ basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.”
 

 [7]
 

 In this court, ASB makes no claim that classwide application of California law would be constitutionally impermissible under
 
 Phillips Petroleum Co.
 
 v.
 
 Shutts, supra,
 
 472 U.S. 797.
 

 [8]
 

 A number of federal courts have approved nationwide or multistate class action certification for pendent state law claims where the
 
 defendants
 
 failed to show that foreign law is more properly applied to the claims of nonresident class members under California’s governmental interest analysis. (E.g.,
 
 Harmsen v. Smith
 
 (9th Cir. 1982) 693 F.2d 932, 946-947;
 
 Roberts
 
 v.
 
 Heim
 
 (N.D.Cal. 1987) 670 F.Supp. 1466, 1494;
 
 In re Pizza Time Theatre Securities Litigation
 
 (N.D.Cal. 1986) 112 F.R.D. 15, 20-21;
 
 In re Computer Memories Securities Litigation
 
 (N.D.Cal. 1986) 111 F.R.D. 675, 685; cf.
 
 Martin v. Dahlberg, Inc.
 
 (N.D.Cal. 1994) 156 F.R.D. 207, 216 [acknowledging the burdens upon the defendants but declining to certify a class based solely on state law claims].) Courts elsewhere have reached similar conclusions in applying the rules of their own states. (E.g.,
 
 In re ORFA Securities Litigation
 
 (D.N.J. 1987) 654 F.Supp. 1449, 1462-1463 [applying New Jersey’s conflict of laws rules, which were modeled after California’s, and finding New Jersey law applicable to pendent class claims where defendants did not show substantial differences in state law doctrines];
 
 Lobo Exploration Co. v. Amoco Production
 
 (Okla.Ct.App. 1999) 991 P.2d 1048, 1053-1054 [defendants failed to show why Oklahoma law would be inapplicable to class claims];
 
 Weatherly
 
 v.
 
 Deloitte & Touche
 
 (Tex.Ct.App. 1995) 905 S.W.2d 642, 650.) Although we disagree with those decisions to the extent they suggest that disputes over applicable law need not be resolved at the time of certification, we find they properly illustrate the concept that constitutional limitations are not transgressed by forum state laws that require the class action opponent to show the applicability of foreign law.
 

 [9]
 

 Rule 23(b)(3) provides that a class action is maintainable if “the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” In making these findings, the trial court considers: “(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 
 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular
 
 
 *923
 

 forum; (D) the difficulties likely to be encountered in the management of a class action.’’ (Ibid.,
 
 italics added.)
 

 [10]
 

 We note that, while we generally agree with the reasoning parenthetically expressed for this last authority, we need not and do not intimate any views on the district court’s conclusions regarding the significance or insignificance of the particular variations discussed or the propriety of the certification order in that case.
 

 [11]
 

 Canon U.S.A.
 
 concluded that, in deciding whether California has a special obligation to undertake the burden of a nationwide class action, courts should consider “whether the nationwide class would promote judicial economy in California courts,' whether California claimants would be aided in their recovery by class litigation, and the extent of the connection the parties have with California.”
 
 (Canon U.S.A., supra,
 
 68 Cal.App.4th at p. 8.)
 

 [12]
 

 While we recognize that the submission of proposed instructions and special verdict forms would be extremely helpful in ascertaining whether a trial on nationwide class claims will be manageable, we decline to require such submissions in each and every case. Instead, we conclude the individual trial courts should retain discretion in the matter and should exercise that discretion to meet the needs of the particular circumstances before them.
 

 [13]
 

 Both in the trial court and on appeal, Briseno and ASB have disputed whether and to what extent the unfair business practices statutes of the various states differ from each other. ASB points out that some but not all of the statutes exempt financial institutions and that some require proof of the plaintiffs reliance for liability. ASB also argues that the statutes of limitations and the right to jury trial differ among states, that certain procedural preconditions apply in some states, and that remedies and legal standards under the different statutes vary with regard to the availability of actual, treble, and punitive damages. Without expressing any views on this dispute, we note that,
 
 if
 
 the trial court were to determine that the claims of out-of-state residents must be resolved under the unfair business practices laws of their own states, instead of California’s UCL, then at present such claims appear to be outside the scope of Briseno’s complaint. (See
 
 ante,
 
 fn. 1.)
 

 [14]
 

 While our decision today generally requires trial courts to decide disputes regarding choice-of-law provisions before certifying a nationwide class action, we do not rule out the possibility that, on rare occasions, such disputes need not be resolved prior to certification. For example, it may be that issues regarding the applicability or enforceability of choice-of-law agreements need not be decided if the class action proponent establishes, in the first instance, that application of all contractually designated laws will not defeat predominance or manageability and that all other prerequisites for certification of a nationwide class are met. (See
 
 ante,
 
 pt. B.) In addition, our decision leaves open the option that disputes regarding choice-of-law provisions may be resolved in a separate phase of the proceeding that precedes the certification process.