# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-4168

MARK FREUND, ET AL.,                                              PETITIONERS,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS,                                    RESPONDENT.

Before ALLEN, *Chief Judge*, and MEREDITH and LAURER, *Judges*.

## O R D E R

This case has been pending before one federal court or another for almost 5 years. We may be nearing the end of that journey. Pending before the Court are the parties' joint motion to certify a class and appoint class counsel, as well as a joint motion to approve a proposed settlement and terminate the case. As we explain, we will grant the joint motion to certify a class and appoint class counsel. We will hold the motion to approve the proposed settlement and terminate this case in abeyance pending the provision of notice of the settlement to the class and a fairness hearing under Rule 23(e)(2) of the Court's Rules of Practice and Procedure (Rules).

## I. BACKGROUND

On June 21, 2021, J. Roni Freund, a veteran, and Mary S. Mathewson, the surviving spouse of veteran Marvin Mathewson, jointly filed, through counsel, a petition for extraordinary relief in the form of a writ of mandamus.[1] In their petition, petitioners argued that VA erroneously closed their pending administrative appeals in the legacy administrative appeal system due to an automated sweeping function in the Veterans Appeals Control and Locator System (VACOLS). On the same date they filed the petition, petitioners also filed a Request for Class Certification and Class Action (RCA), seeking to represent a class of purportedly similarly situated claimants. In the RCA, petitioners defined the class as:

> [a]ll claimants with a timely perfected legacy appeal: (1) that is an original appeal, (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the [S]ubstantive [A]ppeal appears in [the Veterans Benefits Management System (VBMS)], and (6) for which VA has not issued a rating decision regarding the [S]ubstantive [A]ppeal's timeliness.[2]

---

[1] On July 7, 2022, Ms. Freund passed away. Her brother, Mark Freund, filed a motion to substitute. On October 12, 2022, the Court granted Mr. Freund's motion to be substituted as petitioner. On February 19, 2025, Mrs. Mathewson passed away. Her son, Mark Mathewson, filed a motion to substitute. On June 6, 2025, the Court granted Mr. Mathewson's motion to be substituted as a petitioner.

[2] RCA at 8.

On June 29, 2021, this matter was submitted to a panel of the Court. On October 20, 2022, after the parties filed supplemental memoranda and the Court held oral argument, we denied petitioners' RCA and dismissed the petition.[3] As to the petition, we concluded, in part, that petitioners' individual claims were moot because VA had reactivated their previously closed appeals.[4] As for the RCA, we denied class certification after determining that the commonality and adequacy of representation prerequisites for class certification were not satisfied.[5] Petitioners appealed our decision to the United States Court of Appeals for the Federal Circuit (Federal Circuit).

On August 20, 2024, the Federal Circuit vacated this Court's decision and remanded the matter "to further consider [the] class certification ruling, and, if a class is certified, to determine the appropriate relief."[6] The Federal Circuit held that this Court abused its discretion when we concluded that the proposed class did not meet the commonality and adequacy of representation requirements.[7] The Federal Circuit held that "the case [was] not moot as to the class claims because it satisfies the inherently transitory claim standard."[8] The Federal Circuit also held that the proposed class definition provided objective criteria for class membership and concluded that the ascertainability requirement for class certification was "clearly met here."[9] The Federal Circuit instructed this Court particularly to address the superiority requirement for class certification, reasoning that "administrative feasibility may bear on whether class resolution is superior to individual resolution."[10] Following mandate at the Federal Circuit, the matter returned to us on October 11, 2024.

On November 4, 2024, the Court ordered the parties to provide supplemental memoranda addressing the Federal Circuit's decision.[11] Additionally, we asked the parties to address whether the Court should modify the superiority factors in *Skaar v. Wilkie* to address the issue of superiority in the context of a petition rather than an appeal.[12] Following the November 2024 order, the parties filed—and the panel granted—numerous motions to stay proceedings while the parties attempted to negotiate a joint resolution.

After several rounds of negotiations, the parties reached a mutually agreeable resolution. On December 16, 2025, the parties filed the joint motions before us today. In their joint motion to

---

[3] *Freund v. McDonough*, 35 Vet.App. 466, 474 (2022) (order) (*Freund I*), *vacated and remanded*, 114 F.4th 1371 (Fed. Cir. 2024) (*Freund II*).

[4] *Freund I*, 35 Vet.App. at 482-83.

[5] *Id*. at 485-89.

[6] *Freund II*, 114 F.4th at 1374.

[7] *Id*. at 1377.

[8] *Id*. at 1374.

[9] *Id*. at 1378.

[10] *Id*.

[11] Nov. 4, 2024, Court Order at 3-4.

[12] *Id*. at 4; *Skaar v. Wilkie*, 32 Vet.App. 156, 197 (2019) (en banc order), *vacated and remanded on other grounds sub nom.*, *Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022).

certify, the parties ask the Court to "certify a class consisting of all claimants with an appeal file in [VACOLS] that has been closed and remains closed."[13] They also ask that we appoint Mr. John D. Niles to serve as class counsel.[14] In terms of the proposed settlement,[15] the parties agree that VA will conduct a case-by-case review to identify flagged appeals that were improperly closed between December 12, 1990, and February 6, 2025, despite having potentially timely appeals.[16] Once the audit is completed, VA proposes to reactivate all appeals that warrant reactivation from the review, provide notice to affected class members, and process the reactivated appeals expeditiously.[17] The parties also agree to provide class members whose closed Substantive Appeals were not captured by the audit the opportunity to challenge the closure of their appeals directly with VA.[18]

We proceed as follows. We first address whether class certification is appropriate. Taking into account that we are considering class certification at the settlement stage, and according significant weight to the Federal Circuit's decision in this case, we conclude that class certification is appropriate. We then grant the parties' request that we appoint Mr. John D. Niles as class counsel. Finally, we turn to the proposed settlement. We describe the notice we will direct be provided to the class concerning the proposed settlement and explain that we will hold the joint motion to terminate in abeyance pending a fairness hearing to be held following the provision of notice.

## II. CLASS CERTIFICATION

We begin by reviewing the requirements for class certification. In order to certify a class, we must ensure that the requirements of Rule 23(a) of the Court's Rules are met.[19] The prerequisites under Rule 23(a) are:

> (1) the class is so numerous that consolidating individual actions in the Court is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class;

---

[13] Joint Motion to Certify and Appoint Class Counsel (Joint Motion to Certify) at 1. We note that the proffered class definition in the joint motion to certify is a broader class than what was previously described in the class definition in the RCA.

[14] *Id*. at 2.

[15] While we will provide a summary of the proposed settlement, we do not purport to describe all of its provisions. *See* Joint Motion to Approve the Proposed Settlement and Terminate the Case (Joint Motion to Approve the Proposed Settlement) at 5-18 (Proposed Settlement Agreement ¶¶ 1-17).

[16] Proposed Settlement Agreement ¶ 2.

[17] *Id*. at ¶¶ 4-5.

[18] *Id*. at ¶¶ 3-4.

[19] U.S. VET. APP. R. 23(a)(1)-(5); *see* FED. R. CIV. P. (FRCP) 23(a)(1)-(4), (b)(2).

3

(4) the representative parties will fairly and adequately protect the interests of the class; and

(5) the Secretary or one or more official(s), agent(s), or employee(s) of the Department of Veterans Affairs has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is appropriate respecting the class as a whole.[20]

In addition to these Rule 23(a) prerequisites, the Court must also consider whether a class action is superior to issuing a precedential decision.[21] And finally, the Federal Circuit has recognized that while it is not a requirement under the Federal Rules of Civil Procedure or our Rules, ascertainability—that is, the ability to identify who is in the class—is an implied requirement for class certification.[22] The key to satisfying the implied ascertainability requirement is whether the class definition is described using objective criteria.[23]

Let's start with the parties' proposed class: "all claimants with an appeal file in [VACOLS] that has been closed and remains closed."[24] This class, which is set forth in the joint motion to certify, does not contain a time limit or any other constraint on its face. However, we read the definition in concert with the parties' proposed settlement agreement. In paragraph 2 of the proposed settlement agreement, the parties make clear that the class at issue includes 28,258 appeals that had been automatically closed in VACOLS "between December 12, 1990, and February 6, 2025, for lack of a timely filed [S]ubstantive [A]ppeal."[25] So, we will proceed to analyze this proposed class based on the joint motion to certify along with the proposed settlement agreement: "all claimants with an appeal file in VACOLS that has been closed in the period between December 12, 1990, and February 6, 2025, due to the lack of a timely filed Substantive Appeal and which appeal remains closed."[26]

Before proceeding through the class certification requirements, we pause to note three important factors that guide our analysis. First, we are considering class certification in the context of a proposed settlement. As we will discuss below, while the requirements for class certification remain constant, whether a court is considering certification in the context of a settlement—as opposed to a contested adjudication—matters in terms of how the criteria are employed.[27] So we caution litigants that our analysis must be seen through the lens of a settlement class.

---

[20] U.S. Vet. App. R. 23(a)(1)-(5).

[21] *Freund II*, 114 F.4th at 1376; *Beaudette v. McDonough*, 34 Vet.App. 95, 107 (2021) (order), *aff'd on other grounds*, 93 F.4th 1361 (Fed. Cir. 2024); *see* U.S. Vet. App. R. 22(a)(3).

[22] *Freund II*, 114 F.4th at 1377-78 (citing *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021)).

[23] *Id*. at 1378.

[24] Joint Motion to Certify at 1.

[25] Proposed Settlement Agreement ¶ 2.

[26] The Court has previously altered a class definition as part of the certification analysis. *See Godsey v. Wilkie*, 31 Vet.App. 207, 221-22 (2019) (per curiam order).

[27] *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) (*Hyundai II*).

Our second guide is that we are not writing on a blank slate. As we have noted, and as we will discuss further, the Federal Circuit has weighed in—authoritatively—on certain certification-related questions in this case. As this Court has noted in another context, that means that our analysis here is affected both by the Federal Circuit's explicit holdings, as well as by "the spirit" of the Federal Circuit's opinion.[28]

Finally, as the recitation of the facts and procedural history of this matter makes clear, this is an unusual case in many respects. The uniqueness of the problem at the heart of this matter and the context in which we are considering the matters before us—for example, a settlement class in the shadow of a Federal Circuit decision—make our analysis unlikely to be useful in assessing classes in other contexts. With this caution in place, we turn to class certification in earnest.

### A. Numerosity

For the numerosity prong of the class certification test to be satisfied, the class must be "so numerous that consolidating individual actions in the Court is impracticable."[29] Generally, courts find that numerosity is met "if the class comprises 40 or more members."[30] Over the course of the proceedings in this case, there have been varying estimates of the size of the potential class. However, the key to our numerosity analysis today is the parties' settlement agreement. They state that there are

> 28,258 appeal files that VA flagged by an automated search on February 7, 2025, as potentially having a timely filed [S]ubstantive [A]ppeal, coded as such in [VBMS], despite being closed by [VACOLS] automatically between December 12, 1990, and February 6, 2025, for lack of a timely filed [S]ubstantive [A]ppeal.[31]

Given the parties' agreement that there are 28,258 appeals that come within the class definition as we have described by synthesizing the joint motion to certify and the proposed settlement agreement, we have no difficulty concluding that the numerosity requirement is satisfied here. We now move onto the commonality requirement.

### B. Commonality

Class certification also requires that "there are questions of law or fact common to the class."[32] The Supreme Court has instructed that "[c]ommonality requires the plaintiff to

---

[28] *Atilano v. McDonough*, 35 Vet.App. 490, 493 (2022) (per curiam).

[29] U.S. Vet. App. R. 23(a)(1).

[30] *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

[31] Proposed Settlement Agreement ¶ 2.

[32] U.S. Vet. App. R. 23(a)(2).

5

demonstrate that class members 'have suffered the same injury.'"[33] To meet this prerequisite, a "'common contention'" among class members must be "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[34]

In the RCA, petitioners argued that VA erroneously closed timely perfected legacy appeals and that the Secretary unlawfully withheld agency action by keeping those appeals closed.[35] In its review of our decision in *Freund I*, the Federal Circuit addressed commonality directly and determined that the commonality requirement was met, at least as to the class definition in play at that time.[36] The Federal Circuit found that "there is a common answer to a common question here" because "[t]he proposed class members have all suffered the same injury—the Secretary closed their appeals in VACOLS despite their timely filed Substantive Appeals."[37] The Federal Circuit noted that if petitioners were to prevail in obtaining class certification, then "VA would be ordered to develop a process to identify the class members and reactivate their appeals."[38]

Of course, the proposed class here today is broader than the one the Federal Circuit considered in *Freund II*. But considering the "spirit" of the Federal Circuit's decision,[39] we see no meaningful difference between the proposed class here and the one for which the Federal Circuit found the commonality requirement was satisfied. The proposed class, as we have defined it, includes all appeals closed between December 12, 1990, and February 6, 2025, because VA determined there was no timely Substantive Appeal.[40] That common feature binds the class and triggers VA's obligation under the proposed settlement agreement to conduct a case-by-case audit to identify appeals that were inappropriately closed.[41] To be sure, not everyone included in the proposed class will be injured in the sense that their appeal was wrongfully closed. But every member of the class is injured in the sense that their appeal was closed under the cloud of error but in a way that makes it difficult to determine whether there was, in fact, an error in VA's closing of the appeal. The proposed settlement agreement addresses that injury for every member of the class in a common way. VA will conduct a case-by-case review of the appeal files for each member of the proposed class to determine whether a class member, in fact, suffers from the narrower injury of actually having a wrongly closed appeal.[42]

---

[33] *Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[34] *Freund I*, 35 Vet.App. at 488 (quoting *Wal-Mart*, 564 U.S. at 350); *see Monk v. Wilkie*, 978 F.3d 1273, 1277 (Fed. Cir. 2020).

[35] *Freund I*, 35 Vet.App. at 474.

[36] *Freund II*, 114 F.4th at 1377.

[37] *Id*.

[38] *Id*.

[39] *Atilano*, 35 Vet.App. at 493.

[40] Proposed Settlement Agreement ¶ 2.

[41] *Id*.

[42] *Id*.

6

We reiterate our earlier caution about extrapolating our analysis here into other class certification analyses, particularly those that are not addressing a proposed settlement class where the Federal Circuit has already weighed in. In sum, we conclude, in line with the Federal Circuit's decision in *Freund II* and the unique facts of the case before us, that the commonality requirement is satisfied.[43]

## C. Typicality

The next prerequisite for class certification, typicality, overlaps with the commonality requirement.[44] Typicality requires that "the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class."[45] It "focuses on whether 'in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'"[46] "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'"[47] The inquiry centers on whether the representatives' claims stem from the same course of conduct that impacts the class and are rooted in the same legal theory.[48]

We conclude that typicality is satisfied here in essentially the same way as the commonality prerequisite. Petitioners and the proposed class members were affected by the same conduct by VA—the closure of an appeal in VACOLS because of an erroneous determination that there was no timely Substantive Appeal and the uncertainty about whether their appeals had been wrongly closed. Because the Federal Circuit has determined that the related prerequisite of commonality has been satisfied and because petitioners' claims share the same essential characteristics of the proposed class, we hold that petitioners' claims are typical of the class.

## D. Adequacy of Representation

Next, class certification requires that "the representative parties will fairly and adequately protect the interests of the class."[49] This adequacy of representation is "'twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'"[50] "The adequacy inquiry . . .

---

[43] We note that because the class is broad in this case, the Court will engage in a heightened analysis at the settlement approval stage to ensure that the proposed settlement is "fair, reasonable, and adequate." U.S. VET. APP. R. 23(e)(2). In short, we must ensure that the broad nature of the class does not cause harm to any members.

[44] *Skaar*, 32 Vet.App. at 192.

[45] U.S. VET. APP. R. 23(a)(3).

[46] *Skaar*, 32 Vet.App. at 192 (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

[47] *Id*. at 193 (quoting *Wolin v. Jaguar Land Rover N.A.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

[48] *In re Drexel Burnham Lambert Grp.*, *Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *De La Fuente v. Stokely-Van Camp*, *Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

[49] U.S. VET. APP. R. 23(a)(4).

[50] *Skaar*, 32 Vet.App. at 193 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)).

serves to uncover conflicts of interest between named parties and the class they seek to represent."[51]

The Federal Circuit determined that "the named petitioners and class members similarly situated satisfied" the adequacy of representation requirement "because in each case at the time of the filing of the complaint they had received no communication from the VA concerning the closure of their appeals."[52] The Federal Circuit noted that this lack of communication from VA with respect to the closure of appeals is "all that is required for representation" since "petitioners suffered the same injury as the other proposed class members."[53] The Federal Circuit also opined that there is no suggestion of a conceivable conflict between any of the named petitioners and the class, finding that petitioners satisfy the adequacy of representation requirement.[54] We are bound by the Federal Circuit's holding concerning the adequacy of representation, and we can't see how the revised class definition before us changes that analysis. So, we conclude that this requirement for class certification is satisfied.

### E. General Applicability of Secretary's Conduct

The fifth prerequisite for class certification under Rule 23(a) requires that "the Secretary or one or more official(s), agent(s), or employee(s) of [VA] has acted or failed to act on grounds that apply generally to the class."[55] Under Rule 23(a)(5), the primary question is "whether the same injunctive or other relief is appropriate for both the representative and the members of the proposed class."[56] Petitioners claim that the Secretary deprived them and the class members of action on their timely filed Substantive Appeals "because the Secretary ha[d] closed them erroneously."[57] And so petitioners argue that they seek the same injunctive relief as class members: for VA to reinstate their erroneously closed appeals. Moreover, in the proposed settlement agreement, the parties identify conduct that is universal to the class in terms of specifying VA's obligation to conduct a case-by-case file review.[58] Every member of the class we are considering will be entitled to the case-by-case review of their closed appeal that the proposed settlement agreement describes.[59] So, we conclude that the same-relief requirement under Rule 23(a)(5) is met.

---

[51] *Amchem Products*, *Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).

[52] *Freund II*, 114 F.4th at 1377.

[53] *Id.*

[54] *Id.*

[55] U.S. Vet. App. R. 23(a)(5).

[56] *Furtick v. McDonough*, 34 Vet.App. 293, 298 (2021) (per curiam order) (comparing U.S. Vet. App. R. 23(a)(5) *with* FRCP (23)(b)(2)).

[57] RCA at 21.

[58] Proposed Settlement Agreement ¶ 2.

[59] *Id.*

### F. Ascertainability

Next, although not expressly listed as a requirement under Rule 23, the Federal Circuit joined the majority of federal courts by requiring that class members be readily identifiable or "ascertainable."[60] Jurisdictions generally administer two types of tests to assess ascertainability. Most courts utilize a traditional ascertainability test that focuses on whether the existence of class members can be identified by reference to objective criteria in the class definition.[61] Other courts go one step further and apply a more stringent administrative feasibility requirement, necessitating that "'identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'"[62] The Federal Circuit adopted the majority approach that focuses on the objective nature of the class definition.[63] The court then held that "[t]he traditional test for ascertainability is clearly met here because the class is defined by objective criteria—whether a claimant timely filed a Substantive Appeal yet had their appeal closed in VACOLS."[64] The Federal Circuit explained that the class was defined by objective, verifiable criteria "even if it is not presently known which claimants will ultimately qualify for the class."[65] The logic applies to the proposed class here. There is nothing subjective in the class definition. So we conclude that the implicit ascertainability requirement is satisfied here.

We note that the Federal Circuit rejected the application of the administrative feasibility test for ascertainability, stating that "administrative feasibility may bear on whether class resolution is superior to individual resolution" but that this Court had "not yet ruled on the superiority of class resolution."[66] We will return to this administrative feasibility issue in the next section of this order dealing with the superiority question.

### G. Superiority

Finally, when considering a request to certify a class, this Court assesses whether class-wide relief is superior to the resolution of a matter through a precedential decision standing alone. Under Rule 22(a)(3), the superiority requirement is met when "a decision granting relief on a class action basis would serve the interests of justice to a greater degree than would a precedential decision granting relief on a non-class action basis."[67] In *Skaar*, this Court outlined a balancing

---

[60] *Freund II*, 114 F.4th at 1378; *see Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 595 (3d Cir. 2012).

[61] *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 472-73 (S.D. Fla. 2018) (citing *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 952 (11th Cir. 2015)).

[62] *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013) (quoting William B. Rubenstein, 1 NEWBERG & RUBENSTEIN ON CLASS ACTIONS, § 3.3 (5th ed. 2011)); *see Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D. N.Y. 2006).

[63] *Freund II*, 114 F.4th at 1378.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] U.S. VET. APP. R. 22(a)(3).

test involving a nonexhaustive set of factors for determining, on a case-by-case basis, whether the presumption against aggregation action is rebutted.[68] The *Skaar* factors are

> whether (i) the challenge is collateral to a claim for benefits; (ii) litigation of the challenge involves compiling a complex factual record; (iii) the appellate record is sufficiently developed to permit judicial review of the challenged conduct; and (iv) the putative class has alleged sufficient facts suggesting a need for remedial enforcement.[69]

Before the parties reached their proposed settlement, the Secretary conceded that "[p]etitioners have demonstrated that 'the challenge is collateral to a claim for benefits' and 'the appellate record is sufficiently developed to permit judicial review of the challenged conduct.'"[70] We agree with the Secretary. As to the initial factor, the class claim here is collateral to the class's individual claims for benefits because VA failed to resume action on the erroneously closed appeals, thereby preventing VA from rendering a decision for those appeals. The erroneous closure issue bears no relationship to the underlying merits of the various administrative appeals. And in terms of the third superiority factor, whether the record is sufficiently complete for adjudication, we agree with petitioners that the appendices to the RCA contain all the information and facts necessary to demonstrate that the Secretary inappropriately closed timely filed appeals and that the appeals, at the time the RCA was filed, remained closed.[71]

As to the second *Skaar* factor, whether litigation of the challenge involves compiling a complex factual record, the Secretary argued at one point that petitioners "concede that compiling a complex factual record in this case is not needed."[72] We need not resolve whether, in a case in which we were considering class certification for adjudication purposes, petitioners' claims would require the development of a complex factual record. We are dealing with a settlement class. The parties have agreed upon the nature of the record that is required to address the claims at issue. Essentially, this *Skaar* factor drops out of the equation in the context of a settlement class.

Finally, the fourth and last *Skaar* factor for superiority requires us to consider whether the putative class has alleged sufficient facts suggesting a need for remedial enforcement. Once again, the fact that we are dealing with a settlement class is significant. The proposed settlement agreement the parties negotiated establishes a plan for VA to engage in a case-by-case review of 28,258 appeal files and take specific action should it be determined that an appeal was

---

[68] *Skaar*, 32 Vet.App. at 197.

[69] *Id*. As we noted earlier, in the November 2024 and April 2025 Court orders, we asked the parties to address the superiority question. We also asked them to address whether we should modify the *Skaar* factors expressly to address petitions as opposed to appeals. Nov. 4, 2024, Court Order at 4; Apr. 24, 2025, Court Order at 1. The parties spent the bulk of their efforts on the *Skaar* factors themselves. Given that we are dealing with a settlement class here, we leave for another day the question of whether we should formally modify the *Skaar* factors to address petitions.

[70] Secretary's Aug. 11, 2025, Response to the Apr. 24, 2025, Court Order at 4 (quoting *Skaar*, 32 Vet.App. at 197).

[71] RCA at 25.

[72] Secretary's Oct. 12, 2021, Response to the RCA at 8.

inappropriately closed.[73] This proposal basically recognizes the equivalent of the type of remedial enforcement that the fourth *Skaar* factor contemplates.

In addition to the *Skaar* factors, the Secretary at one point asked the Court to consider the difficulties of manageability in terms of proceeding on a class-wide basis.[74] Of course, the Secretary does not press the manageability concern now given the parties' proposed settlement. And that makes perfect sense because manageability concerns that might be paramount in the context of the certification of a contested class for adjudication purposes simply aren't present in the context of a class to be certified for settlement purposes.

Particularly instructive on the issue of class manageability is *Hyundai II*.[75] There, the Ninth Circuit sitting en banc affirmed the district court's certification of a nationwide settlement class of a multidistrict litigation against Hyundai Motor America and Kia Motors America.[76] The class members consisted of purchasers and lessees of certain models of Hyundai and Kia cars who relied on alleged misrepresentations concerning the vehicles' fuel economy disclosures.[77] The parties reached a settlement agreement.[78] The district court approved the class settlement, but a split panel at the Ninth Circuit "vacated the class certification decision and remanded, holding that by failing to analyze the variations in state law, the district court abused its discretion in certifying the settlement class."[79]

Upon rehearing the case, the Ninth Circuit en banc court affirmed the district court's certification of the settlement class.[80] The Ninth Circuit repeatedly noted that the application of class certification criteria differs between litigation classes and settlement classes. The Ninth Circuit emphasized that when determining whether to certify a class, a district court need not be concerned with class manageability when dealing with a settlement class.[81] The Ninth Circuit stressed that district courts should inquire whether a litigation class would present management problems, but such management issues are "*not* a concern in certifying a *settlement class* where, by definition, there will be no trial."[82]

---

[73] Proposed Settlement Agreement ¶¶ 2, 4.

[74] Secretary's Aug. 11, 2025, Response to the Apr. 24, 2025, Court Order at 4-5.

[75] 926 F.3d 539.

[76] *Id*. at 552-53.

[77] *Id*. at 553.

[78] *Id*. at 554.

[79] *Id*. at 555 (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018) (*Hyundai I*)).

[80] *Hyundai II*, 926 F.3d at 552.

[81] *Id*. at 556-57, 558 (stating "[a]s noted above, in deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems'"), 563 (noting "[i]n settlement cases, such as the one at hand, the district court need not consider trial manageability issues (both citing *Amchem*, 521 U.S. at 620)).

[82] *Id*. at 556-57 (emphasis added).

Here, we need not consider the manageability issues that may otherwise preclude class certification because the parties have agreed to a settlement. In other words, manageability concerns are not implicated in the context of *Freund* because the case is being settled.

Considering the *Skaar* factors in the context of a settlement class, we determine that a class action is superior to a precedential decision in resolving this matter.

### *H. Class Certification Conclusion*

We conclude that certification of the requested class is appropriate here. Placing great weight on the Federal Circuit's determinations in *Freund II*, all the Rule 23(a) criteria are satisfied. In addition, the class members can be identified through the objective criteria in the proposed class definition we are considering. And finally, in the context of the proposed settlement of this matter, we conclude that proceeding as a class action is superior to only issuing a precedential decision concerning the matters before us.

## III. APPOINTMENT OF CLASS COUNSEL

Class certification also requires the appointment of class counsel "[u]nless a statute provides otherwise."[83] In appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.[84]

The parties have requested that the Court appoint John D. Niles as class counsel. They note that:

> Mr. Niles is Managing Shareholder and Chief Executive Officer of the law firm Carpenter Chartered, which is willing to commit whatever resources are necessary to adequately represent the class— to include staffing sufficient attorneys and paralegals on this matter and to devoting such technological resources and additional personnel to this matter as are warranted. Mr. Niles has represented veterans and other claimants in significant litigation [citations omitted]. Through his work in this case and with other clients seeking relief under a law that affects the provision of benefits by the Secretary to veterans and their dependents or survivors, he understands the error at issue and the potential remedies.[85]

---

[83] U.S. VET. APP. R. 23(f)(1).

[84] U.S. VET. APP. R. 23(f)(1)(A)(i)-(iv); *see Beaudette*, 34 Vet.App. at 108.

[85] Joint Motion to Certify at 2; *see* RCA, Ex. C-11 (Declaration of John D. Niles).

12

The Court concludes that Mr. Niles satisfies all the requirements for appointment under Rule 23(f)(1). He has the necessary experience, knowledge, and resources to represent the proposed class. Accordingly, we appoint Mr. Niles as class counsel.

## IV. PROPOSED SETTLEMENT

Once the Court grants class certification, the Court must decide whether to approve the class action settlement.[86] Rule 23(e) governs the process by which the Court considers whether to approve class action settlements. The procedures under Rule 23(e) that apply to a proposed settlement are as follows:

(1) The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the Court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) Any class member may object to the proposal if it requires Court approval under this subdivision (e); the objection may be withdrawn only with the Court's approval.[87]

*A. Rule 23(e) Notice of and Right to Object to the Proposed Settlement*

Under Rule 23(e)(1), once a class is certified, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."[88] In paragraph 8 of the proposed settlement agreement, the parties have agreed to a detailed notice plan to inform potential class members about the proposed settlement.[89] The parties state that the class notice will: (i) describe the *Freund* class; (ii) provide the name and contact information of class counsel; (iii) describe the terms of the settlement; (iv) note that the settlement will bind class members; (v) note the right to object to the settlement by filing a written objection, including the postal and email addresses for filing objections; (vi) note that objections must (a) be filed within 30 days of the class notice, (b) include the objector's full name, and (c) include docket number 21-4168; and (vii) note that the Court will schedule a hearing to determine whether the proposed settlement is fair, reasonable, and adequate.[90] The parties plan to publish notice through VA's weekly newsletter, news.va.gov, 93 community veterans engagement boards, and 84 accredited veterans

---

[86] U.S. VET. APP. R. 23(e).

[87] U.S. VET. APP. R. 23(e)(1)-(4).

[88] U.S. VET. APP. R. 23(e)(1).

[89] Proposed Settlement Agreement ¶ 8.

[90] *Id.*

service organizations. We find this notice plan sufficient and direct the parties to implement the notice plan as submitted.

The parties also agree that the class notice will generally "be published and disseminated within 30 days after the date of a Court order" indicating the means through which objections must be filed.[91] The parties shall designate a mailing address and an email address for the submission of objections and include those contact addresses in the notice. Within 7 days of the expiration of the objection period, the parties must provide the Court with a joint report regarding any objections that were timely submitted to the parties, including the transmittal of the objections themselves.

### B. Rule 23(e)(2) Hearing

After completing class notice dissemination and the deadline for class members to file written objections to the proposed settlement, we will schedule a hearing under Rule 23(e)(2) to determine whether the proposed settlement is fair, reasonable, and adequate.

### V. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the parties' December 16, 2025, joint motion to certify a class is granted as described in this order. The *Freund* class is defined as "all claimants with an appeal file in the Veterans Appeals Control and Locator System (VACOLS) that has been closed in the period between December 12, 1990, and February 6, 2025, due to the lack of a timely filed Substantive Appeal and which appeal remains closed." It is further

ORDERED that the parties' December 16, 2025, joint motion to appoint class counsel is granted. John D. Niles, Esq., is appointed Class Counsel. It is further

ORDERED that, within 30 days of the date of this order, the parties shall effectuate notice to class members as provided in Paragraph 8 of the Proposed Settlement Agreement. It is further

ORDERED that upon the expiration of the due date for objections to the proposed settlement, and no more than 7 days later, the parties notify the Court whether any members of the class have objected to the proposed settlement agreement. Should there be any objections, the parties shall forward them to the Court along with the notice required under this paragraph. And it is further

ORDERED that the motion to approve the proposed settlement and terminate the case is held in abeyance pending the fairness hearing required under Rule 23(e)(2). The Court will schedule the Rule 23(e)(2) hearing following the period allowed for objecting to the proposed settlement.

DATED: March 18, 2026                                          PER CURIAM.

---

[91] Proposed Settlement Agreement ¶ 8.